UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

LOUISIANA HIGHWAY ST. GABRIEL, LLC        CASE NO. 20-10824
    DEBTOR        CHAPTER 11


LOUISIANA HIGHWAY ST. GABRIEL, LLC,
ALABAMA HIGHWAY BRIDGEPORT, LLC,
GRANGE ROAD PORT WENTWORTH, LLC,
INDUSTRIAL PARK BOULEVARD WARNER ROBBINS, LLC,
RANGE LINE ROAD MOBILE, LLC,
SIOUX FALLS, LLC,
    PLAINTIFFS

VERSUS        ADV. NO. 21-1007

LVS II SPE I, LLC,
B2 FIE VII, LLC,
B2 FIE VIII, LLC,
U.S. BANK NATIONAL ASSOCIATION,
    DEFENDANTS


## MEMORANDUM OPINION

Plaintiffs, single asset real estate debtors in jointly administered cases, are owned by Commercial Warehousing, Inc. ("CWI").  Each plaintiff owns a single piece of real property (collectively "Plaintiffs' Properties")[1] mortgaged to secure an affiliate's debt to some of the defendants.  Plaintiffs challenge the validity of those mortgages on several grounds.

---

[1] Louisiana Highway St. Gabriel, LLC ("St. Gabriel") owns 3825 Louisiana Hwy. 30, St. Gabriel, LA ("St. Gabriel Property"). Alabama Highway Bridgeport, LLC ("Bridgeport") owns 52680 Alabama Hwy. 277, Bridgeport, AL ("Bridgeport Property"). Grange Road Port Wentworth, LLC ("Grange Rd.") owns 322 Grange Rd., Port Wentworth, GA ("Grange Rd. Property"). Industrial Park Boulevard Warner Robbins, LLC ("Industrial Park") owns 201 Industrial Park Blvd., Warner Robbins, GA ("Industrial Park Property"). Range Line Road Mobile, LLC ("Range Line") owns 5025 Range Line Rd., Mobile, AL ("Range Line Property"). Sioux Falls, LLC ("Sioux Falls") owns 1600 E. Benson Rd., Sioux Falls, SD ("Sioux Falls Property").

## I. Facts

### A. The Original Agreement

CWI and the R. Mark Bostick Family Trust ("Bostick Trust") together owned the majority of outstanding shares of plaintiffs' affiliate, Comcar Industries, Inc. ("Comcar").[2] Comcar borrowed $55,000,000 from LVS II SPE, LLC ("LVS") in 2014, memorialized in a credit agreement[3] in favor of LVS (the "2014 Credit Agreement"). The plaintiffs mortgaged their real estate as collateral for the Comcar loan, naming U.S. Bank National Association ("U.S. Bank"), the lenders' collateral agent, as mortgagee.[4] LVS later assigned its rights under the 2014 Credit Agreement to B2 FIE VII, LLC ("FIE VII").

### B. The Later Agreements

The complaint alleges that two years later, after Comcar encountered difficulties paying the debt, the Bostick Trust and CWI transferred 90% of their interest in Comcar to FIE VII (doing so through the "Exchange Agreement").[5] The same day, FIE VII granted R. Mark Bostick an option to repurchase the Comcar stock in exchange for $40,000,000 and payment of Comcar's then outstanding debt to FIE VII or its affiliates ("Stockholder Agreement").[6]

---

[2] The Stockholder Agreement recites that the Bostick Trust and CWI owned 99% of Comcar's stock but transferred only 90%. BUS, LLC, owned the remaining one percent. Stockholder Agreement, P-12, Exhibit 1-I, Schedule A, p. 25 of 33.

[3] 2014 Credit Agreement, P-12, Exhibit 1-J.

[4] The mortgages are exhibits A through F to the Declaration of Christopher Neumeyer in Support of the Motion to Dismiss [P-12, Exhibit 1-A through F].

[5] Exchange Agreement, P-12, Exhibit 1-G.

[6] Stockholder Agreement, P-12, Exhibit 1-I. Bostick concedes he did not exercise his option to repurchase the Comcar interest timely, though he contended that FIE VII thwarted his doing so. That dispute is not relevant to this ruling.

In connection with the Exchange and Stockholder Agreements, Comcar and FIE VII entered into a Second Amended and Restated Credit Agreement in late 2016 ("2016 Credit Agreement").[7] The 2016 Credit Agreement defines FIE VII as the "Existing Lender" and provides that on consummation of the Exchange Agreement, B2 FIE VIII LLC ("FIE VIII") would become the new lender.[8]

On May 17, 2020, Comcar and some affiliates filed chapter 11 in the District of Delaware.[9] The plaintiffs, CWI and R. Mark Bostick all filed proofs of claim in Comcar's bankruptcy and eventually settled disputes over those claims with Comcar and its unsecured creditors' committee. The settlement was approved in both the plaintiffs' and Comcar's bankruptcy cases.[10]

### C. Demands for Relief

Plaintiffs' complaint alleges that FIE's receipt of the 90% equity in Comcar through the Exchange Agreement canceled Comcar's 2014 debt to FIE and seeks various forms of relief premised on that allegation, including cancellation of the mortgages on their real estate.

Defendants LVS, FIE VII and FIE VIII (collectively the "FIE Defendants") move to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b).[11] Defendant U.S. Bank joins in

---

[7] Amended Credit Agreement, P-12, Exhibit 1-H.

[8] *See* definition of *Lender*, P-12, Exhibit 1-H, p. 13.

[9] Case no. 20-11120, U.S. Bankruptcy Court, District of Delaware.

[10] Plaintiffs' bankruptcy case no. 20-10824, P-120; Comcar's bankruptcy case no. 20-11120, U.S. Bankruptcy Court, Dist. of Delaware, P-1241.

[11] FIE Defendants' Motion to Dismiss, P-12.

the FIE Defendants' motion to dismiss and urges other reasons why it should be dismissed from the lawsuit.[12]

This memorandum opinion explains why the motions to dismiss will be granted in part and denied in part.

## II. Motion to Dismiss Standard

Courts considering motions to dismiss a complaint for failing to state a claim upon which relief can be granted must:

> accept all well-pleaded facts as true and view facts in the light most favorable to the plaintiff. … To survive dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## III. Analysis

This opinion addresses each count of the complaint in turn.

### A. Count I

Count I of the complaint alleges that the mortgages on Plaintiffs' Properties and any security interests except those relating to the St. Gabriel Property are invalid because the exchange of debt for equity in the Exchange Agreement satisfied the 2014 loan.

Fed. R. Civ. P. 8(a)(2), made applicable by Fed. R. Bankr. P. 7008, provides

A pleading that states a claim for relief must contain:

(1) a short plain statement of the grounds for the court's jurisdiction;

(2) a short plain statement of the claim showing that the pleader is entitled to relief; and

---

[12] U.S. Bank's Motion to Dismiss, P-15.

[13] *Thompson v. City of Waco, Texas,* 764 F.3d 500, 502-503 (5th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)).

    (3) a demand for the relief sought ….

"The purpose of this requirement is "to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"[14]

    The complaint includes a short, plain statement of jurisdiction. To show that the plaintiffs are entitled to relief, it excerpts the 2016 Credit Agreement that references the Exchange Agreement and a debt for equity exchange, alleging that the exchange satisfied outstanding loans. It also contends that as a result, the mortgages (other than St. Gabriel) are invalid under state laws applicable to each plaintiff's site.

    Finally, it satisfies Rule 8 by containing a demand for the relief sought: a declaration that the any mortgages and UCC-1 liens are invalid and order that the mortgages and liens be cancelled.

    Accepting the facts pled as true, the plaintiffs have given the defendants fair notice of the claims against them and grounds on which those claims rest. Count I of the complaint therefore states a claim upon which relief can be granted.

### B. Count II

    Count II of the complaint alleges that the debt represented by the 2016 Credit Agreement should be recharacterized as equity because Comcar was undercapitalized and FIE VIII had no expectation that Comcar would repay the loan. Assuming the debt is recharacterized as equity, plaintiffs allege that the mortgages on Plaintiffs' Properties would be invalid because they would not secure a valid debt.

---

[14] *Wooten v. McDonald Transit Associates, Inc.,* 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007), and *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957), *abrogated on other grounds*)).

The defendants respond that *res judicata* bars the plaintiffs' challenge to their Count II claims because plaintiffs were obliged to pursue that claim in Comcar's chapter 11 reorganization.[15]  They reason that because "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action,"[16] defendants' claims are now barred because they were, or should have been, raised in the bankruptcy court presiding over Comcar's reorganization.

Although typically *res judicata* is pled as an affirmative defense, the Fifth Circuit has held that it may be urged in a motion to dismiss.[17]

> [W]hile res judicata is generally an affirmative defense to be pleaded in a defendant's answer (*Test Masters Educ. Servs., Inc. [v. Singh],* 428 F.3d [559,] 570 n. 2 [(5th Cir. 2013)]) there are times when it may be raised on a Rule 12(b)(6) motion.  This Court has found that res judicata may be properly raised on a motion to dismiss when "the facts are admitted or not controverted or are conclusively established." *Clifton v. Warnaco, Inc.,* 53 F.3d 1280, 1995 WL 295863, at *6 n. 13 (5th Cir.1995) (per curiam) (unpublished) (internal citations omitted).  "When all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Id.*

The plaintiffs have not argued that the defendants have improperly raised *res judicata* at this stage of the proceedings.

Ruling on this aspect of the defendants' motion requires review of materials outside the complaint, specifically the Comcar bankruptcy case record.  Indeed, it is appropriate in ruling on a motion to dismiss to take "judicial notice of publicly available documents and transcripts."[18]

---

[15]  *In re Comcar Industries, Inc.,* case no. 20-11120, U.S. Bankruptcy Court District of Delaware.

[16]  *Houston Professional Towing Association v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

[17]  *Meyers v. Textron, Inc.,* 540 F.App'x 408, 409-10 (5th Cir. 2013).

[18]  *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)).  *See also Basic Capital Management, Inc. v. Dynex Capital, Inc*., 976 F.3d 585, 589 (5th Cir. 2020) (holding that Fed. R. Evid. 201(d) expressly provides that a court 'may take judicial notice at any state of the

*Res judicata* bars a claim in a later proceeding if the party invoking the doctrine establishes that:

(1) the parties to two proceedings are identical or in privity;

(2) the judgment in the prior action was rendered by a court of competent jurisdiction;

(3) the prior action was concluded by a final judgment on the merits; and

(4) the same claim or cause of action was involved in both actions.[19]

Plaintiffs' memorandum concedes that the elements of *res judicata* are satisfied;[20] nevertheless, they still dispute that the cause of action for recharacterization is barred. The plaintiffs explain their failure to raise the recharacterization action in Comcar's bankruptcy in the following words:

> Given the minimal expected recoveries for general unsecured creditors in the Comcar Bankruptcy Case, the Plaintiffs did not seek to have FIE VIII's debt recharacterized in the Comcar Bankruptcy Case. At the time, the Plaintiffs' pursuit of a recharacterization of the debt would have been a futile and expensive process.[21]

The plaintiffs also argue that they could not have raised recharacterization because FIE VIII had not yet threatened foreclosure, so they were not aware that the validity of the defendants' claims would be an issue. Finally, the plaintiffs contend that *res judicata* is inapplicable because they specifically reserved the cause of action for recharacterization in the settlement agreement

---

proceeding,' and Fifth Circuit precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion).

[19] Houston Pro. Towing Ass'n v. City of Houston, 812 F.3d at 447 (citations omitted).

[20] Plaintiffs' Objection to Motions to Dismiss, P-40, ¶ 101.

[21] *Id.* at ¶ 103.

approved in both the plaintiffs' and Comcar's chapter 11 cases.[22] The plaintiffs' argument fails for three reasons.

First, the plaintiffs admitted their decision not to pursue a recharacterization cause of action was calculated because initiating that dispute "would have been a futile and expensive process."[23] As the United States Supreme Court observed in *Federated Department Store, Inc. v. Moitie*,[24] a party cannot escape *res judicata* after making a calculated choice not to act.

Second, *res judicata* applies not only to subsequent actions between identical parties but also to those in privity with the parties to the earlier proceeding. The defendants contend that the plaintiffs are in privity with CWI, their parent company, whose recharacterization claim against U.S. Bank in Comcar's bankruptcy was overruled by the confirmation order. The facts alleged in the complaint support the conclusion that they were in privity.

Parties are considered in privity for *res judicata* analysis in three instances:

> First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit....[25]

CWI wholly owns and controls the plaintiffs, has the same address and had the same counsel in Comcar's bankruptcy. In Comcar's bankruptcy, CWI objected to the proof of claim of U.S. Bank as collateral or funding agent for FIE VII.[26] The objection alleged that all FIE VIII's loans to

---

[22] *Id.* at ¶ 104.

[23] Plaintiffs' Objection to Motions to Dismiss, P-40, ¶ 103.

[24] *Federated Department Store, Inc. v. Moitie*, 452 U.S. 394, 400-401, 101 S.Ct. 2424, 2429 (1981).

[25] *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172 (5th Cir. 1987) (citations omitted).

[26] CWI's Objection to U.S. Bank's Proof of Claim, P-12, Exhibit 1-M; *In re Comcar Industries, Inc., et al*, case no. 20-11120, U.S. Bankruptcy Court, District of Delaware, P-493.

Comcar after November 2019 should be recharacterized as equity contributions rather than debt. CWI elected not to seek recharacterization of the funding provided before 2019, including the 2016 loan involved in this dispute. CWI controls the plaintiffs but did not cause them to bring any recharacterization claims. For the plaintiffs now to suggest that they should or could not have brought all recharacterization claims at the same time in the Comcar case is disingenuous.

Finally, the plaintiffs contend that *res judicata* is inapplicable because they specifically reserved the recharacterization cause of action against the defendants in a February 2021 settlement,[27] citing *In re Texas Wyoming Drilling, Inc.*[28]

The plaintiffs' argument relies on their February 2021 settlement with Comcar and Comcar's unsecured creditors' committee, which both Comcar's bankruptcy court and this court approved.[29] The settlement document recited that the releases of the parties "are not intended to and shall not release any pending or unasserted claims or defenses by the Bostick Parties [defined to include the plaintiffs] against non-Comcar Debtor third parties, including without limitation the PIMCO Entities [defined to include the defendants]."[30]

The flaw in plaintiffs' argument is that the settlement agreement reserved only the rights that existed when the plaintiffs and others entered the settlement agreement in February 2021. Well before then, Comcar had arranged debtor-in-possession financing with FIE VIII and U.S.

---

[27] *Id.* at ¶ 104.

[28] *In re Texas Wyoming Drilling, Inc.,* 647 F.3d 547, 553 (5th Cir. 2011) ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding."), (quoting *Browning v. Levy*, 283 F.3d 761, 774 (5th Cir. 2005), and *Ries v. Paige (In re Paige),* 610 F.3d 865, 875 (5th Cir. 2010)).

[29] Plaintiffs' bankruptcy case no. 20-10824, P-120; Comcar's bankruptcy case no. 20-11120, U.S. Bankruptcy Court, Dist. of Delaware, P-1241.

[30] Plaintiffs' bankruptcy case no. 20-10824, P-120, Exhibit 1, ¶ 7; Comcar's bankruptcy case no. 20-11120, U.S. Bankruptcy Court, Dist. of Delaware, P-1241, Exhibit 1, ¶ 7.

Bank, which the Comcar bankruptcy court approved on July 2, 2020 ("DIP Order").[31] The DIP Order included a release by all parties in interest of any cause of action for recharacterization.[32] The DIP Order also gave parties until August 3, 2020 to challenge its terms, including the bar to recharacterization claims.[33] Plaintiffs failed to challenge any terms of the DIP Order by the deadline so *res judicata* bars their effort to recharacterize the debt now.[34]

The plaintiffs' recharacterization claim (Count II of the complaint) will be dismissed.

## C. Count III

The plaintiffs' count III alleges the Stockholder Agreement entitles them to specific performance in the form of a release of the mortgage liens on their properties. They claim that the defendants prevented Mr. Bostick from timely exercising his option to repurchase the Comcar stock as the Stockholder Agreement provided. Though plaintiffs are not parties to the Stockholder Agreement, they contend they are its third-party beneficiaries with standing to enforce it.

---

[31] Final Order (I) Authorizing Debtors to Obtain Postpetition Financing pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superiority Claims and (V) Modifying Automatic Stay, P-12, Exhibit 1-L; *In re Comcar Industries, Inc., et al*, case no. 20-11120, U.S. Bankruptcy Court, District of Delaware, P-370.

[32] DIP Order, P-12, Exhibit 1- L, p. 10 of 183; *In re Comcar Industries, Inc., et al.*, case no. 20-11120, U.S. Bankruptcy Court, District of Delaware, P-370.

[33] *Id*. at p. 46 of 183.

[34] The DIP Order was served on the plaintiffs' and CWI's counsel in the Comcar case, Robert J. Dehney and Eric W. Moats of Morris Nichols Arsht & Tunnel, LLP. Comcar's bankruptcy case no. 20-11120, U.S. Bankruptcy Court, Dist. of Delaware, P-375, Exhibit 1.

The defendants respond that plaintiffs are not third-party beneficiaries of the Stockholder Agreement under Florida law, which the parties agree governs the Stockholder Agreement,[35] and so lack standing.

In *Mendez v. Hampton Ct. Nursing Center,*[36] the Florida Supreme Court enumerated the four elements required to establish a third-party beneficiary's standing to enforce a contract:

> The doctrine of third-party beneficiaries provides that under certain circumstances, a person may sue to enforce a contract, even though the person is not a party to the contract. *See* 11 Fla. Jur.2d *Contracts* § 206, at 406–07 (2008). "To establish an action for breach of a third party beneficiary contract, [the third-party beneficiary] must allege and prove the following four elements: '(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach.' " *Found. Health v. Westside EKG Assocs.,* 944 So.2d 188, 194–95 (Fla. 2006) (quoting *Networkip, LLC v. Spread Enters., Inc.,* 922 So.2d 355, 358 (Fla. 3d DCA 2006)); *see also* Patrick John McGinley, 21 Fla. Prac., *Elements of an Action* § 603:1 (2015–2016 ed.).[37]

The plaintiffs argue that the third party "do[es] not need to be specifically mentioned by name so 'long as the contract refers to a well defined class of readily identifiable persons' that it intends to benefit."[38]

But the Stockholder Agreement does not refer to any third persons that it intends to benefit, much less a "well defined class of readily identifiable persons." To the contrary, Stockholder Agreement paragraph 6.3 provides:

> The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the permitted respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any

---

[35] Plaintiffs' Objection to Motions to Dismiss, P-40, ¶ 114; FIE Defendants' Memorandum in Support of Motion to Dismiss, P-12-15, ¶ 59.

[36] Mendez v. Hampton Court Nursing Center, LLC, 203 So.3d 146 (Fla. 2016).

[37] 203 So.3d at 148-149.

[38] *Belik v. Carlson Travel Group, Inc.,* 864 F.Supp.2d 1302, 1312 (S.D. Fla. 2011).

party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as provided in this Agreement.[39]

Paragraph 6.3 of the Stockholder Agreement makes plain that the parties to that agreement did not intended to benefit any third parties, and Florida law is clear that a non-party to an agreement

> has no standing to enforce it. … When a contract is designed solely for the benefit of the contracting parties, a third party cannot enforce its provisions even though the third party may derive some incidental or consequential benefit from the enforcement.[40]

The plaintiffs cited *Belik v. Carlson Travel Group, Inc.* for the position that intent to benefit third parties "is an issue more appropriate for summary judgment."[41] Intent is irrelevant because the Stockholder Agreement specifically provides that it does not benefit third parties.[42]

The plaintiffs also cited *Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd.*[43] That decision also is distinguishable. The *Technicable* complaint alleged that the contract in question specifically created a benefit for minority business enterprises; the plaintiff was a minority business enterprise; and the defendant had not rebutted the facts in the complaint. The facts alleged there differ from those alleged in this dispute.

---

[39] Stockholder Agreement, P-12, Exhibit 1-I.

[40] *Gallagher v. Dupont*, 918 So.2d 342, 347 (Fla. 5th Dist. Ct. App. 2005) (citing *K–Mart Corp. v. State, Dept. of Transp.,* 636 So.2d 131, 133 (Fla. 2d Dist. Ct. App. 1994)).

[41] *Belik v. Carlson Travel Group, Inc.,* 864 F.Supp.2d at 1313.

[42] *See Reconco v. Integon Nat'l Ins. Co*., 312 So.3d 914, 919 (Fla. 4th Dist. Ct. App. 2021) (dismissal for lack of standing as a third-party beneficiary is appropriate when the contract "expresses a clear or manifest intent *not* to benefit" the mover).

[43] *Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd.,* 479 So.2d 810 (Fla. 3d Dist. Ct. App. 1985).

Plaintiffs are not third-party beneficiaries of the Stockholder Agreement and lack standing to enforce it. Count III, therefore, is dismissed.

### D. Count IV

The plaintiffs concede that their claim for conversion in Count IV should be dismissed for failure to state a claim upon which relief can be granted.[44]

### E. Count V

Count V of the complaint alleges that the defendants were unjustly enriched at plaintiffs' expense by obtaining mortgages on plaintiffs' properties without providing any benefit to the plaintiffs.[45] After the defendants' supporting memorandum pointed out that the quasi-contract theory of unjust enrichment was not available to plaintiffs because the claims arose out of actual contracts, the plaintiffs refined their argument. They clarified in their objection to the motions to dismiss that their claim of unjust enrichment did not arise out of either the 2014 or 2016 Credit Agreement. Instead, the claim rested on the defendants' having prevented Mr. Bostick from exercising his option to repurchase the Comcar stock.[46]

> Under Florida law, chosen by the parties to govern the Stockholder Agreement,
>
> The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.[47]

---

[44] Plaintiffs' Objection to Motions to Dismiss, P-40, n. 4.

[45] Complaint, P-1, ¶ 82-84.

[46] Plaintiffs' Objection to Motions to Dismiss, P-40, ¶ 127.

[47] *Agritrade, LP v. Quercia*, 253 So.3d 28, 33 (Fla. 3d Dist. Ct. App. 2017) (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. 3d Dist. Ct. App. 1996)).

Fed. R. Civ. P. 8(a)(2), made applicable by Fed. R. Bankr. P. 7008, requires that a complaint contain "a short and plain statement of a claim showing that the pleader is entitled to relief." "The purpose of this requirement is "to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"[48]

That plaintiffs had to clarify their allegations in their objection to the motion to dismiss shows that the allegations of Count V have not given defendants fair notice of the claim and grounds upon which their claim for unjust enrichment rests. Count V of the complaint is artful but ambiguous and, therefore, is dismissed.

### F. Count VI

The plaintiffs allege in Count VI that U.S. Bank breached a duty to them by failing to release the mortgagees on satisfaction of the 2014 loan in 2016. U.S. Bank counters that it owed plaintiffs no such duty under the 2014 Credit Agreement.

The 2014 Credit Agreement provides that the collateral agent, U.S. Bank, with limited exceptions, must have prior written authorization from the lenders to release liens. The agreement states that the liens may be cancelled:

> (i) upon the payment and satisfaction if full in cash of all secured obligations, (ii) constituting property being sold or disposed of if the Loan Party disposing of such property certifies to the Collateral Agent that the sale or disposition is made in compliance with the terms of this Agreement … (iii) constituting property leased to a Loan Party under a lease which has expired or been terminated …, or (iv) as required to effect any sale or other disposition of such Collateral in connection with any exercise of remedies …. In addition, in the event that all or any portion of any property subject to a Mortgage is determined by the Collateral Agent or Required Lenders to be environmentally impaired …[49]

---

[48] *Wooten v. McDonald Transit Associates, Inc.,* 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007), and *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957), *abrogated on other grounds*)).

[49] 2014 Credit Agreement, Section 9.02(c), P-12, Exhibit 1-J.

The plaintiffs contend that the 2014 loan was satisfied by an exchange of debt for equity through the 2016 Credit Agreement. But the complaint's allegations make plain that the loan was not paid in full in cash; the collateral was not sold, leased or otherwise disposed of; and no determination was made that the property is environmentally impaired. Because none of the circumstances enumerated in the 2014 Credit Agreement for release without written authorization apply, U.S. Bank had no duty under the 2014 Credit Agreement to release the liens based on the facts plaintiffs alleged.

The plaintiffs concede that they were not parties to the 2014 Credit Agreement and now argue that U.S. Bank's duty arises under the mortgages between them as mortgagors and U.S. Bank as mortgagee. The flaw in that argument is that the mortgages all provide that U.S. Bank's duty to release the liens is "subject to the satisfaction of the conditions set forth in section 9.02(c) of the [2014] Credit Agreement,"[50] requiring that U.S. Bank receive written authorization to release the liens, except in certain limited instances not found here.

Because U.S. Bank had no duty to release the liens, Count VI is dismissed.

Although Count VI of the complaint will be dismissed, U.S. Bank will not be dismissed as a party. Fed. R. Civ. P. 19, made applicable by Fed. R. Bankr. P. 7019, provides

> A person who is subject to service of process and whose joinder will not deprive
> the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief
> > among existing parties; or
>
> > (B) that person claims an interest relating to the subject of the action and is
> > so situated that disposing of the action in the person's absence may:

---

[50] Range Line Property Mortgage, P-12, Exhibit 1-A, p. 4; Bridgeport Property Mortgage, P-12, Exhibit 1-B, p. 4; Industrial Park Mortgage, P-12, Exhibit 1-C, p. 4; Grange Rd. Property Mortgage, P-12, Exhibit 1-D, p. 4; St. Gabriel Property Mortgage, P-12, Exhibit 1-E, p. 4; and Sioux Falls Mortgage, P-12, Exhibit 1-F, p. 4.

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"[O]ne focus of Rule 19 is 'the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.'"[51] U.S. Bank, as mortgagee, is required for complete relief among existing parties.

## IV. Conclusion

The motions to dismiss are denied as to Count I. Counts II through VI of the complaint are dismissed.

Baton Rouge, Louisiana, June 21, 2021.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[51] *Temple v. Synthes Corp.,* 498 U.S. 5, 6, 111 S. Ct. 315 (1990) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 739 (1968)).